IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| W.L. GORE & ASSOCIATES, INC. and<br>GORE ENTERPRISE HOLDINGS, INC.,     )<br>)<br>)<br>Plaintiffs,     )<br>)<br>v.     )<br>)<br>VALEO-SYLVANIA L.L.C. and     )<br>LABEL TECHNOLOGIES, INC.,     )<br>)<br>Defendants.     )<br>) | C.A. No. 08-111 (GMS) |

**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO DEFENDANT LABEL
TECHNOLOGIES' MOTION TO DISMISS FOR LACK OF
<u>PERSONAL JURISDICTION</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Karen Jacobs Louden (#2881)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
klouden@mnat.com
rsmith@mnat.com
   *Attorneys for Plaintiffs W.L. Gore & Associates,*
   *Inc. and Gore Enterprise Holdings, Inc.*

May 5, 2008

i.

## TABLE OF CONTENTS

Page

NATURE AND STAGE OF THE PROCEEDING ................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 1

      A.      The Parties ........................................................................................................... 1

      B.      The Patent In Suit ................................................................................................. 2

      C.      LTI's Infringement ............................................................................................... 4

ARGUMENT .............................................................................................................................. 6

I.      ASSERTING PERSONAL JURISDICTION OVER LTI IS CONSISTENT WITH THE DELAWARE LONG-ARM STATUTE AND CONSTITUTIONAL DUE PROCESS ........................................................................... 6

      A.      Personal Jurisdiction Is Proper Under The Delaware Long-Arm Statute ................................................................................................................. 6

      B.      Personal Jurisdiction Is Consistent With Constitutional Due Process .............................................................................................................. 11

II.     IF NECESSARY, GORE REQUESTS THE OPPORTUNITY TO TAKE JURISDICTIONAL DISCOVERY ................................................................ 13

CONCLUSION ........................................................................................................................ 14

ii.

## TABLE OF CITATIONS

Page(s)

**CASES**

*CC Investors Corp. v. Raytheon Co.*,
   219 F.R.D. 328 (D. Del. 2003) ...................................................................................6

*International Shoe Co. v. Washington*,
   326 U.S. 310 (1945)..............................................................................................6, 13

*Power Integrations, Inc. v. BCD Semiconductor Corp.*,
   2008 U.S. Dist. LEXIS 32681 (D. Del. 2008) ..........................................7, 8, 11, 12

*LaNuova D&B, S.p.A. v. Bowe Co.*,
   513 A.2d 764 (Del. 1986) ..........................................................................................7

*Boone v. Oy Partek*,
   724 A.2d 1150 (Del. Super. 1997)..................................................................7, 8, 12

*Wright v. American Home Prods. Corp.*,
   768 A.2d 518 (Del. Super. 2000)...............................................................................8

*Phillips Electronics N. Am. Corp. v. Contec Corp.*,
   2004 WL 503602 (D. Del. 2004) ...............................................................................8

*Adell Corp. v. Elco Textron, Inc.*,
   51 F. Supp. 2d 752 (N.D. Tex. 1999) ...................................................................9, 10

*Jacobs Chuck Mfg. Co. v. Shandong Weida Machinery Co., Ltd.*,
   2005 U.S. Dist. LEXIS 36211 (E.D. Tex. 2005) .....................................................10

*Motorola, Inc. v. PC-Tel, Inc.*,
   58 F. Supp. 2d 349 (D. Del. 1999)......................................................................10, 11

*Donnelly Corp. v. Reitter & Schefenacker GmbH & Co. KG*,
   189 F. Supp. 2d 696 (W.D. Mich. 2002) .................................................................11

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980)............................................................................................11, 12

*Asahi Metal Indus. Co. v. Superior Court of California*,
   480 U.S. 102 (1987)..................................................................................................12

*American Bio Medica Corp. v. Peninsula Drug Analysis Co.*,
   1999 U.S. Dist. LEXIS 12455 (D. Del. 1999) .........................................................13

iii.

*Hadley v. Shaffer*,
   2003 U.S. Dist. LEXIS 14106 (D. Del. 2003) ....................................................................... 13

*Grand Entm't Group v. Star Media Sales*,
   988 F. 2d 476 (3d Cir. 1993) ................................................................................................ 13

*Honeywell Int'l Inc. v. Apple Computer, Inc.*,
   2008 U.S. Dist. LEXIS 32857 (D. Del. 2008) ....................................................................... 13

*Mass. School of Law at Andover, Inc. v. American Bar Ass'n*,
   107 F.3d 1026 (3d Cir. 1997) ............................................................................................... 14

*Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*,
   395 F.3d 1315 (Fed. Cir. 2005) ............................................................................................ 14

**OTHER AUTHORITIES**

10 Del. C. § 3104(c) ................................................................................................... 6, 7, 8, 9

NATURE AND STAGE OF THE PROCEEDING

W.L. Gore & Associates, Inc. ("W.L. Gore") and Gore Enterprise Holdings, Inc. ("Gore Holdings") (collectively, "Gore") filed this patent infringement action against defendants Valeo-Sylvania L.L.C. ("Valeo") and Label Technologies, Inc. ("LTI") on February 22, 2008. On April 16, 2008, defendant LTI moved to dismiss for lack of personal jurisdiction (D.I. 10). This is Gore's Answering Brief in opposition to LTI's motion.

STATEMENT OF FACTS

A.   The Parties

Gore is a Delaware corporation with a principal place of business at 555 Paper Mill Road, Newark, Delaware 19711. Gore is a leading manufacturer of thousands of advanced technology products that use polytetrafluroethylene ("PTFE"), including its GORETEX® products (DeGuiseppi Decl., ¶ 2). The products at issue in this case are vents that Gore makes from expanded PTFE, which it designs, manufactures, markets and sells for use in reducing condensation in automobile headlamps (*id.*, ¶ 3). Gore began selling its vents for use in reducing condensation in automobile headlamps in 1998 (*id.*, ¶ 5).

One of Gore's customers for the vents is defendant Valeo (DeGuiseppi Decl., ¶ 6). Valeo is a Delaware limited liability company with offices at 1231 A Avenue North, Seymour, Indiana 47274. Valeo is a "Tier 1" supplier in the automotive industry, which means that Valeo provides component parts or services directly to automobile assembly plants (*id.*). Among the products manufactured and sold by Valeo are automobile headlamps for the Dodge Durango® and Chrysler Aspen®, which are manufactured at Chrysler's assembly plant in Newark, Delaware (*id.*, ¶ 7). From May 2006 to October 2007, Gore sold its vents to Valeo for

use in manufacturing the headlamps installed in the Dodge Durango and Chrysler Aspen in Delaware (*id.*, ¶ 12).

Defendant LTI is a Georgia corporation with a principal place of business in Suwanee, Georgia (D.I. 11 at 2). In November 2007, Valeo stopped purchasing Gore's vents for use in the headlamps installed in the Dodge Durango and Chrysler Aspen, and began purchasing vents from defendant LTI, including LTI's Yellow-76 vents (DeGuiseppi Decl., ¶ 13).

### B. The Patent In Suit

The patent in suit is U.S. Patent No. 6,210,014 B1 ("the '014 patent"), which is entitled "System for Reducing Condensation In Enclosed Lamp Housings" (DeGuiseppi Decl., Ex. A). Gore filed the parent application on January 21, 1997, and filed a continuation-in-part application (which resulted in the '014 patent) on January 20, 1998 (*id.*). The '014 patent issued on April 3, 2001 (*id.*).

The patented invention involves the use of water vapor permeable materials that cover a vent opening of a defined size in automobile lamps to reduce condensation:

> The present invention relates to systems for reducing or eliminating condensation inside enclosed housings of vehicle lamps such as, for example, automobile, truck, motorcycle, and boat lamps. . . .
>
> In a preferred embodiment of the present invention, the novel condensation venting systems comprise water vapor permeable materials covering ***venting opening areas greater than 132 mm$^2$***, which accelerate the removal of condensation from vehicle lamps while providing protection from entry of foreign materials and liquid water.

(DeGuiseppi Decl., Ex. A, col. 3, ll. 18-22, col. 4, ll. 1-6; emphasis added).

As explained in the patent, the preferred embodiment is a vent made from expanded PTFE membranes (like GORETEX):

> In a particularly preferred embodiment of the present invention, the condensation vent of the present invention comprises a water vapor permeable, liquid water-resistant expanded PTFE, such as that produced through the methods described in U.S. Pat. No. 3,953,566 to Gore, U.S. Pat. No. 3,962,153 to Gore, U.S. Pat. No. 4,096,226 to Gore and U.S. Pat. No. 4,187, 390 to Gore . . . .

(DeGuiseppi Decl., Ex. A, col. 7, ll. 7-13).

As depicted in Figure 1 of the patent, "a typical enclosed automotive lamp incorporating a condensation vent of the present invention comprises a housing **10**, a lens **12**, a reflector region **14** integral with the housing **10**, a bulb **16**, a socket **18** . . . [and a] condensation vent or vents **22** . . . located along a portion of the housing **10**":



(DeGuiseppi Decl., Ex. A, col. 6, ll. 4-10).

Claim 1 of the patent requires that the headlamp have a vent opening of a certain size, which is covered by a condensation vent comprising at least one microporous, water permeable material:

> 1.   A vent system for reducing condensation in enclosed vehicle front lamps, comprising:

>   an enclosed vehicle front lamp housing having an interior, an exterior surface, and a least one vent opening communicating between the atmosphere external to the lamp housing and the interior, with *a total vent opening area of at least 132 mm$^2$*; and
>
>   *a condensation vent comprising at least one microporous, water vapor permeable material* covering said at least one vent opening,
>
>   whereby said condensation vent permits water vapor passage between the interior of the lamp housing and the atmosphere.

(DeGuiseppi Decl., Ex. A, col. 13, ll. 7-19; emphasis added).

>   C.   LTI's Infringement

The Yellow-76 automotive vents that LTI sells to Valeo, when used in a headlamp supplied to Chrysler, infringe the '014 patent. LTI's vents are made from "Expanded Microporous PTFE Membrane," and are used to cover the same vent openings in the headlamps in the Dodge Durango and Chrysler Aspen that had been previously covered using the Gore vents (DeGuiseppi Decl., Ex. D & ¶ 14).

In supplying its vents to Valeo, LTI would know that its vents are used in headlamps that are supplied to Chrysler for installation in the Dodge Durango and Chrysler Aspen in Newark, Delaware.[1] In supplying parts to "Tier 1" suppliers in the automotive industry (like Valeo), companies like Gore and LTI submit bids to the Tier 1 suppliers and solicit business from the automobile manufacturers (DeGuiseppi Decl., ¶ 8). At the conclusion of the bidding process, a notification letter is sent to the winning bidder, which then supplies a vent that

---

[1]   Indeed, LTI's Mr. Tapp acknowledges that: "LTI's Yellow-76 vents are sold to automotive lamp manufacturers for use as a component part in automotive lamps. The automotive lamps are then sold to automotive manufacturers for use in various types of automobiles" (D.I. 12, ¶ 5). He also acknowledges that the "Yellow-76 vents have no other purpose than for use as component parts in automobile lamps" (*id.*).

5.

meets the specifications of the headlamp for the specific vehicle (*id.*, Ex. B). Before supplying its Yellow-76 automotive vents to Valeo, LTI would have gone through this bidding process and would have known the specific vehicles for which it was supplying its automotive vents -- in this case, the Dodge Durango and Chrysler Aspen assembled in Newark, Delaware (*id.*, ¶¶ 8, 11).

LTI also would have developed a specification sheet with the exact product dimensions (*see* DeGuiseppi Decl., ¶ 9 & Ex. C). As a result of this process, LTI also would have known that its Yellow-76 vents were being used in headlamps installed in the Dodge Durango and Chrysler Aspen in Newark, Delaware (*id.*, ¶ 11).

Valeo's headlamps (which incorporate LTI's vents) are required to meet Federal Motor Vehicle Safety Standards issued by the National Highway Traffic Safety Administration (DeGuiseppi Decl., ¶ 10). To comply with these regulations, each automotive lamp supplied by Valeo must be certified as a "qualifying part" by the "Tier 1" supplier and the automobile manufacturer (*id.*). This qualification process requires a part supplier like Gore or LTI to work closely with the "Tier 1" supplier (Valeo) and the automobile manufacturer (Chrysler) (*id.*). As a result of this process, LTI would have learned (if it did not know already) that its Yellow-76 vent was being used in headlamps installed in the Dodge Durango and Chrysler Aspen in Newark, Delaware (DeGuiseppi Decl., ¶ 11).

ARGUMENT

I.  ASSERTING PERSONAL JURISDICTION OVER LTI IS CONSISTENT WITH THE DELAWARE LONG-ARM STATUTE AND CONSTITUTIONAL DUE PROCESS

Two requirements must be satisfied for the Court to assert personal jurisdiction over LTI. First, there must be a statutory basis for asserting personal jurisdiction under Delaware's long-arm statute. *See CC Investors Corp. v. Raytheon Co.*, 219 F.R.D. 328, 329 (D. Del. 2003). Second, personal jurisdiction over LTI must not violate due process. *See International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).

    A.  Personal Jurisdiction Is Proper Under The Delaware Long-Arm Statute

The assertion of personal jurisdiction over LTI under a stream of commerce theory is proper under §§ 3104(c)(1) and (c)(4) of the Delaware long-arm statute. *See* 10 *Del. C.* §§ 3104(c)(1) and (c)(4). LTI places its Yellow-76 vents into the stream of commerce knowing that they will be installed in the Dodge Durango and Chrysler Aspen in Newark, Delaware.

The Delaware long-arm statute, 10 *Del. C.* § 3104, states in relevant part:

(c)  As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:

(1)  Transacts business or performs any character of work or service in the State;

                      \*   \*   \*

(4)  Causes tortious injury in the State or outside of the State by an act or omission outside of the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State . . . .

LTI argues that the Court cannot assert personal jurisdiction here because LTI's conduct does not satisfy any single subsection of the long-arm statute (*see* D.I. 11 at 6-8). Delaware courts have held, however, that personal jurisdiction is proper under the Delaware long-arm statute under a stream of commerce theory as a result of "partial satisfaction" of §§ 3104 (c)(1) and (c)(4). *See Power Integrations, Inc. v. BCD Semiconductor Corp.*, 2008 U.S. Dist. LEXIS 32681, at *13 (D. Del. 2008).

"The 'stream of commerce' theory is premised on the idea that a non-resident that places its product in the marketplace may, under certain circumstances, be found to have sufficient contacts for jurisdictional purposes with any state in which its product ends up." *Id.* at *13. "Delaware state courts have . . . held that a stream of commerce theory of jurisdiction may satisfy Delaware's long-arm statute," even though it "does not fit comfortably within any particular provision of Delaware's statute." *Id.* at *14.

In *LaNuova D&B, S.p.A. v. Bowe Co.*, 513 A.2d 764, 768 n.3 (Del. 1986), the Delaware Supreme Court recognized that a stream of commerce theory could be used to establish "dual jurisdiction" under §§ 3104(c)(1) and (c)(4) of the Delaware long-arm statute:

> It is conceivable that a tort claim could enjoy a dual jurisdictional basis under (c)(1) and (c)(4) if the indicia of activity set forth under (c)(4) were sufficiently extensive to reach the transactional level of (c)(1) and there was a nexus between the tort claim and the transaction of business or performance of work.

The Court did not use the "dual jurisdiction" theory in that case, however, because it found that defendants' conduct fully satisfied § 3104(c)(4). *See id.* at 769.

In *Boone v. Oy Partek AB*, 724 A.2d 1150, 1157 (Del. Super. Ct. 1997), the Delaware Superior Court found the "dual jurisdiction" theory under §§ 3104(c)(1) and (c)(4) to be a "fitting solution." The court explained that the concept "best encompasses all of the intricacies of the stream of commerce theory, taking into account the relationship between the

manufacturer and the forum and the relationship between the controversy and the forum." *Id*. The court cautioned against looking at the subsections of the Delaware long-arm statute in isolation -- as LTI does here -- when considering dual jurisdiction. *Id.* at 1158.

As the court explained, the proper inquiry is whether a defendant whose product reaches Delaware through the stream of commerce intended to serve the Delaware market:

> [O]ne must take great care not to overemphasize §§ 3104(c)(1) or (c)(4) under this analysis. It is not important that the indicia of activity under § 3104(c)(4) rise to a level of "general presence" as usually required. Instead, *the enumerated activities in this section should be analyzed to determine whether there is an intent or purpose on the part of the manufacturer to serve the Delaware market with its product*. Likewise, when analyzing § 3104(c)(1) it is not important that the manufacturer itself act in Delaware. Instead, *if the intent or purpose on behalf of the manufacturer to serve the Delaware market results in the introduction of the product to this State and plaintiff's cause of action arises from injuries caused by that product, this section is satisfied*.

*Id.* (emphasis added); *see also Power Integrations*, 2008 U.S. Dist. LEXIS 32681, at *17 ("[T]he touchstone of the dual jurisdiction analysis is <u>intent and purpose to serve the Delaware market</u>.") (emphasis in original); *Wright v. American Home Prods. Corp.*, 768 A.2d 518 (Del. Super. 2000).

The exercise of personal jurisdiction is proper here under §§ 3104(c)(1) and (c)(4) because LTI placed its vents in the stream of commerce with "an intent or purpose" to serve the Delaware market. *Boone*, 724 A.2d at 1158. "This does not mean . . . that the record must show a specific reference to the State of Delaware on the part of [defendant]; it is enough if, based on ongoing relationships with others in the stream of commerce, '*it was reasonably foreseeable that [defendant's] accused [products] . . . would make their way into the Delaware market*.'" *Power Integrations*, 2008 U.S. Dist. LEXIS 32681, at *24 (quoting *Phillips Electronics North America Corp. v. Contec Corp.*, 2004 WL 503602, at *4 (D. Del. 2004)) (emphasis added).

9.

There is no dispute that LTI's vents make their way into Delaware through the stream of commerce and are installed in the Dodge Durango and Chrysler Aspen at Chrysler's assembly plant in Newark, Delaware. LTI avoids addressing this issue in its brief, arguing only that it sells its vents to Valeo in Indiana (D.I. 11 at 2). For example, LTI's President qualified his statement about LTI's shipments to Delaware: "LTI never ***directly*** shipped any products to Delaware" (D.I. 12, ¶ 11; emphasis added). In light of the specific procedures that a parts supplier (like Gore and LTI) must follow to qualify a part to be supplied to a "Tier 1" supplier in the automotive industry, LTI must have known that its Yellow-76 vents were being used in headlamps installed in automobiles in Delaware. LTI does not contend otherwise. LTI placed its products in the stream of commerce with the intent and purpose to serve the Delaware market, and is subject to personal jurisdiction in Delaware under §§ 3104(c)(1) and (c)(4) of the Delaware long-arm statute.

LTI relies heavily on *Adell Corp. v. Elco Textron, Inc.*, 51 F. Supp. 2d 752 (N.D. Tex. 1999) (*see* D.I. 11 at 10). In *Adell*, defendant made component parts for General Motors that were shipped to General Motors assembly plants in Michigan, Indiana and Canada. *Id*. at 753. General Motors then installed the component parts in pickup trucks and shipped the trucks for retail sale across the United States, including Texas. *Id*. at 755. The Texas court declined to exercise personal jurisdiction on the facts of that case. *Id*. at 756.

LTI argues that it is "even a further step removed from the *Adell* defendant since it ships its component product for use in automotive lamps that are then placed in automobiles and then shipped for sale" (D.I. 11 at 11). That is incorrect. This is not a case where the automobiles are manufactured in another state (*e.g.*, Michigan and Indiana) and shipped to dealerships in Delaware. The automobiles at issue are manufactured here in Delaware.

10.

LTI also fails to mention that another Texas court has criticized the court's reasoning in *Adell*, and instead followed this Court's reasoning in exercising jurisdiction under a stream of commerce theory. *See Jacobs Chuck Mfg. Co. v. Shandong Weida Machinery Co.*, 2005 U.S. Dist. LEXIS 36211, at *21-22 (E.D. Tex. 2005) (citing *Motorola, Inc. v. PC-Tel, Inc.* 58 F. Supp. 2d 349 (D. Del. 1999)). In *Jacobs Chuck*, 2005 U.S. Dist. LEXIS 36211, at *3, defendant manufactured drill chucks, which it sold to a manufacturer who distributed power drills containing defendant's drill chucks to a retailer in the forum state. Defendant argued that it was not subject to personal jurisdiction because the allegedly infringing chucks reached the forum state as a result of a unilateral decision by a company wholly unrelated to defendant. *Id.* at *13.

Citing this Court's *Motorola* decision, the Texas court rejected defendant's argument, holding that, under the stream of commerce theory, it was reasonable to infer that defendant knew and expected its chucks would be used as components in drills distributed by the manufacturer to retailers in the forum state. *Id.* at *24 ("[T]his Court . . . does not find *Adell Corp*. persuasive and instead agrees with the reasoning in cases from the Western District of Michigan . . . and the District of Delaware . . . .").

In *Motorola*, 58 F. Supp. 2d at 352, defendant's software was found in a variety of devices sold through electronics stores throughout the country, including in Delaware. Defendant argued it should not be subject to personal jurisdiction in Delaware because it did not ship its software directly to Delaware. *Id*. Defendant also argued that the stream of commerce was not a proper basis for establishing jurisdiction because defendant had no control over its licensees. *Id*. at 353. The Court rejected those arguments and held that personal jurisdiction was proper in Delaware, because "[t]he company, acting in concert with its licensees, sells its

products expressly for integration into end user products with full knowledge that these goods will then be placed into established distribution channels that service the State of Delaware." *Id.* at 355.

Similarly, in *Donnelly Corp. v. Reitter & Schefenacker GmbH & Co. KG*, 189 F. Supp. 2d 696, 699 (W.D. Mich. 2002), a German manufacturer of rear-view mirrors argued that it was not subject to personal jurisdiction in Michigan because it sold its mirrors to Mercedes in Germany, and Mercedes shipped the vehicles to the United States. The court held that it could assert personal jurisdiction over the German manufacturer because the rear-view mirrors "landed in Michigan through the regular and anticipated flow of products." *Id.* at 708. As the court pointed out, the case was "no different from using a distributor to market a product in the United States and intending that the products land there. Defendant . . . had to expect suits in the United States arising out of its sale of the mirrors, given that it directed the mirrors to American markets . . . ." *Id.*; *see also Power Integrations*, 2008 U.S. Dist. LEXIS 32681, at *21 ("[A] non-resident firm's intent to serve the United States market is sufficient to establish an intent to serve the Delaware market, unless there is evidence that the firm intended to exclude from its marketing and distribution efforts some portion of the country that includes Delaware.").

LTI placed its vents into the stream of commerce knowing that Valeo would incorporate them into headlamps installed in the Dodge Durango and Chrysler Aspen in Newark, Delaware. LTI is subject to personal jurisdiction in Delaware.

    B.  Personal Jurisdiction Is Consistent With Constitutional Due Process

The U.S. Supreme Court has held that "[a] forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by

12.

consumers in the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980).

In *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 107 (1987), in a plurality opinion, Justice O'Connor suggested that more than the "mere act of placing the product into the stream [of commerce]" is required to satisfy the Due Process Clause. Justice O'Connor suggested that "an act of the [non-resident] defendant purposefully directed toward the forum State" is required to show "an intent or purpose to serve the market in the forum State." *Id*.

The standard set forth by Justice O'Connor in *Asahi* is similar (if not, identical) to the standard for establishing "dual jurisdiction" under the Delaware long-arm statute. *See Power Integrations*, 2008 U.S. Dist. LEXIS 32681, at *17 ("Both the O'Connor test and the concept of 'dual jurisdiction' look to the non-resident defendant's 'intent or purpose' to serve the Delaware market."); *Boone*, 724 A.2d at 1159 n.4 (describing "dual jurisdiction" as analogous to Justice O'Connor's standard in *Asahi* for establishing personal jurisdiction based on the stream of commerce).

As discussed above, LTI's conduct satisfies the "intent or purpose" test for establishing "dual jurisdiction" under the Delaware long-arm statute. That same conduct also satisfies the standard set forth by Justice O'Connor in *Asahi* for asserting personal jurisdiction under a stream of commerce theory. Based on its actions here, LTI should have "reasonably anticipate[d] being haled into court" in Delaware. *World Wide Volkswagen*, 444 U.S. at 297. Unlike the product at issue in *World Wide Volkswagen*, LTI's Yellow-76 vents are not in Delaware through the attenuated act of an unrelated third party. LTI placed its vents into the stream of commerce knowing that Valeo would incorporate them into headlamps to be installed

13.

in the Dodge Durango and Chrysler Aspen in Newark, Delaware. Asserting personal jurisdiction over LTI in Delaware does not offend "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316.

    II.    IF NECESSARY, GORE REQUESTS THE OPPORTUNITY TO TAKE JURISDICTIONAL DISCOVERY

LTI argues that Gore must prove "with reasonable particularity that sufficient minimum contacts have occurred between the defendant and the forum state to support jurisdiction" (D.I. 11 at 5). That is not the proper test.

Where, as here, "personal jurisdiction is contested without the benefit of discovery, [Gore] need only establish a *prima facie* case with the record viewed in the light most favorable to [Gore]" in order to proceed. *American Bio Medica Corp. v. Peninsula Drug Analysis Co.*, 1999 U.S. Dist. LEXIS 12455, at *5-6 (D. Del. 1999). Once Gore has presented a *prima facie* case, "the burden shifts to the defendant to 'present a compelling case that the presence of some other consideration would render jurisdiction unreasonable.'" *Hadley v. Shaffer*, 2003 U.S. Dist. LEXIS 14106, at *5 (D. Del. 2003) (citing *Grand Entm't Group v. Star Media Sales*, 988 F. 2d 476, 483 (3d Cir. 1993)).

The facts here establish that LTI is subject to personal jurisdiction in Delaware. If the Court for some reason disagrees, however, Gore respectfully requests the opportunity to take jurisdictional discovery from LTI. When considering a motion to dismiss for lack of personal jurisdiction, courts typically provide the plaintiff an opportunity to take jurisdictional discovery "unless the plaintiff's claim is 'clearly frivolous.'" *Honeywell Int'l Inc. v. Apple Computer, Inc.*, 2008 U.S. Dist. LEXIS 32857, at *8 (D. Del. 2008) (citing *Mass. School of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997)). This threshold requirement is satisfied here as the facts suggest "with reasonable particularity" the existence of the requisite contacts

14.

between LTI and Delaware. *Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1323 (Fed. Cir. 2005) (citing *Mass. School of Law at Andover, Inc.*, 107 F.3d at 1042).

## CONCLUSION

For the foregoing reasons, LTI's motion to dismiss should be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

Karen Jacobs Louden (#2881)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
　*Attorneys for Plaintiffs W.L. Gore & Associates,
　Inc. and Gore Enterprise Holdings, Inc.*

May 5, 2008

2316185.1

**CERTIFICATE OF SERVICE**

  I, Rodger D. Smith II, hereby certify that on May 5, 2008, I caused the foregoing document to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

    **Frederick L. Cottrell, III**
    RICHARDS, LAYTON & FINGER, P.A.

  I also certify that copies were caused to be served on May 5, 2008 upon the following in the manner indicated:

    **BY EMAIL AND HAND DELIVERY**

    Frederick L. Cottrell, III
    Richards, Layton & Finger, P.A.
    P.O. Box 551
    One Rodney Square
    Wilmington, DE  19899
    Cottrell@rlf.com

    **BY EMAIL**

    John A. Kenney
    McAfee & Taft
    Two Leadership Square, 10th Floor
    211 North Robinson
    Oklahoma City, OK  73102
    John.kenney@mcafeetaft.com

    */s/ Rodger D. Smith II*
    Rodger D. Smith II (#3778)
    MORRIS, NICHOLS, ARSHT & TUNNELL LLP
    1201 N. Market Street
    P.O. Box 1347
    Wilmington, DE  19899
    (302) 658-9200
    rsmith@mnat.com
    Attorneys for Plaintiffs