IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| W. L. GORE & ASSOCIATES, INC. and GORE ENTERPRISE HOLDINGS, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 08-111 (GMS) |
| v. | ) ) ) | |
| VALEO-SYLVANIA L.L.C. and LABEL TECHNOLOGIES, INC., | ) ) ) | |
| Defendants. | ) | |

**REPLY BRIEF IN SUPPORT OF DEFENDANT LABEL TECHNOLOGIES, INC.'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

OF COUNSEL:

John A. Kenney
Michael D. McClintock
Charles L. McLawhorn, III
McAfee & Taft
Two Leadership Square, 10th Floor
211 North Robinson
Oklahoma City, OK  73102

Dated: May 15, 2008

Frederick L. Cottrell, III (#2555)
Anne Shea Gaza (#4093)
Richards, Layton & Finger PA
One Rodney Square
920 N. King Street
Wilmington, DE  19801
(302) 651-7700
cottrell@rlf.com
gaza@rlf.com

*Attorneys for Defendant.
Label Technologies, Inc*

RLF1-3283921-1

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

RESPONSE TO PLAINTIFFS' STATEMENT OF FACTS ..................................................... 1

    A.   The Parties and Other Alleged Facts ........................................................................ 1

    B.   The Patent In Suit ..................................................................................................... 2

    C.   Alleged Infringement ............................................................................................... 3

RESPONSE TO PLAINTIFFS' ARGUMENTS ........................................................................ 3

    I.   LTI IS NOT SUBJECT TO PERSONAL JURISDICTION IN DELAWARE UNDER THE DELAWARE LONG-ARM STATUTE OR DUE PROCESS ............ 3

    II.   GORE'S REQUEST FOR JURISDICTIONAL DISCOVERY IS UNNECESSARY ..................................................................................................... 8

CONCLUSION ......................................................................................................................... 9

# TABLE OF AUTHORITIES

## CASES

*Asahi Metal Indus. Co. v. Superior Court of California,*
480 U.S. 107 (1986) ............................................................................................................. 4

*Cree, Inc. v. Bridgelux, Inc.,*
2007 WL 3010532 (M.D. N.C. July 5, 2007) ..................................................................... 5

*Davlyn Mfg. Co. v. H&M Auto Parts, Inc.,*
414 F. Supp. 2d 523 (E.D. Pa. 2005) .................................................................................. 7

*Donnelly Corp. v. Reitter & Schefenacker GmbH & Co.,*
189 F. Supp. 2d 696 (W.D. Mich. 2002) ......................................................................... 6, 7

*Jacobs Chuck Mfg. Co. v. Shandong Weida Machinery Co.,*
2005 WL 3299718 (E.D. Tex. Dec. 5, 2005) ................................................................... 6, 7

*M&M Techs., Inc. v. Gurtler Chems., Inc.,*
2005 WL 293509 (D. Del. Feb. 8, 2005) ......................................................................... 5, 6

*Motorola Inc. v. PC-Tel,*
58 F. Supp. 2d 349 (D. Del. 1999) ................................................................................... 5, 6

*Power Integrations, Inc. v. BCD Semiconductor Corp.,*
2008 WL 1775415 (D. Del. Apr. 11, 2008) ................................................................ 3, 4, 7

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.,*
148 F.3d 1355 (Fed. Cir. 1998) ........................................................................................... 7

*Solae, LLC v. Hershey Canada Inc.,*
2008 WL 2019472 (D. Del. May 9, 2008) ......................................................................... 8

## STATUTES

10 *Del. C.* §3104 .................................................................................................................... 3

Defendant, Label Technologies, Inc. ("LTI") respectfully submits the following reply brief in support of its Motion to Dismiss For Lack of Personal Jurisdiction.

## RESPONSE TO PLAINTIFFS' STATEMENT OF FACTS

### A.  The Parties and Other Alleged Facts.

Contrary to Plaintiffs' speculation in its brief and irrelevant to a jurisdictional analysis, LTI did not have knowledge of where the Chrysler Aspen or Dodge Durango vehicles were assembled prior to reviewing Plaintiffs' Answering Brief.[1] Tapp Decl., ¶4. LTI has supplied its Yellow-76 vents to Valeo only since November 2007. Tapp Decl., ¶5. LTI knew the vents would be used in headlights made for the Chrysler Aspen vehicle and potentially the Dodge Durango. Tapp Decl., ¶3. All shipments of LTI's Yellow-76 vents to Valeo have been sent to Valeo in Indiana. Tapp Decl., ¶5. LTI never learned the location of assembly of the Aspen (or Durango) vehicles. Tapp Decl., ¶4. The information was not important to LTI in order for it to satisfy its customer, Valeo. LTI was aware of tests performed on the product for a Chrysler Aspen vehicle, but again, had not received information concerning the location of assembly of the Aspen vehicle prior to reviewing Plaintiffs' Answering Brief. Tapp Decl., ¶7. LTI's communications with Chrysler have been limited to discussions about venting performance. Tapp Decl., ¶7. The location of Chrysler's assembly plant is irrelevant to LTI's design and sale of its vents to Valeo and, therefore, LTI never made an inquiry as to the assembly plant location and did not learn about this location prior to reviewing the Plaintiffs' Answering Brief (assuming such knowledge is even relevant to a jurisdictional analysis). *Id.* LTI made shipments to Valeo

---

[1] The Declaration of Brian Tapp, dated May 15, 2008, is referenced herein as "Tapp. Decl., ¶" and contemporaneously filed herewith.

for the total invoice amount of only $7800 prior to Plaintiffs' filing of this lawsuit on February 22, 2008. Tapp Decl., ¶10.

### B. The Patent In Suit.

Plaintiffs fail to supply critical information concerning the patent in suit, U.S. Patent No. 6,210,014 B1 (the "'014 Patent"). In the specification, the '014 Patent defines the term "vent opening" as "the total cross-sectional area of one or more openings that are covered by water vapor permeable material of the condensation vent". '014 Patent at column 3, lines 60-63, Plaintiffs' Answering Brief, Exhibit A to Declaration of David Deguiseppi (D.I. 14). The term "vent opening" is defined as "the total cross-sectional area of material which is water vapor permeable." The patent further provides: "The cross-sectional area is calculated based on the area of the opening immediately adjacent to the water vapor permeable material." *Id.* at lines 63-65. The '014 Patent file history reflects that in order to obtain the patent, Plaintiffs filed an Affidavit from Donald P. Burch, an industry expert. In his Affidavit, he states that the point of novelty of this invention resides in the increase of "the micro porous vent surface area" beyond 132 mm$^2$. June 6, 2000 Affidavit of Donald P. Burch ¶¶ 2 and 4, attached as Ex. 1. These statements establish that the "total vent opening" refers to the cross-sectional surface area of the water vapor permeable material that is exposed to the interior of the headlamp, not simply the cross-sectional area of the vent hole in the headlamp housing itself.

Contrary to the design of Plaintiffs' vent material, the LTI product incorporates an impermeable adhesive backed material that covers much of the opening in the headlamp housing. The LTI product contains oval shaped openings in the adhesive backed material which are the only areas which allow exposure of the water vapor permeable material to the interior of the

- 2 -

RLF1-3283921-1

headlamp. The LTI total vent opening (cross-sectional area of the portion of the material which is exposed to the interior for transmission of vapor) is <u>less than</u> 132 mm$^2$.

### C. Alleged Infringement.

LTI submits that Plaintiffs' presentation of the allegations of infringement is incomplete and incorrect. LTI further submits that the evidence will show that Plaintiffs knew LTI's Yellow-76 vents were less than 132 mm$^2$ and there is no infringement.

## RESPONSE TO PLAINTIFFS' ARGUMENTS

### I. LTI IS NOT SUBJECT TO PERSONAL JURISDICTION IN DELAWARE UNDER THE DELAWARE LONG-ARM STATUTE OR DUE PROCESS.

In their Answering Brief, Plaintiffs urge the Court to adopt a "dual jurisdiction" theory to satisfy §§ 3104(c)(1) and (c)(4) of the Delaware long-arm statute. (D.I. 13, pp. 7-9). Plaintiffs argue that the exercise of personal jurisdiction over LTI is proper under the Delaware long-arm statute because LTI placed its vents in the stream of commerce with an intent or purpose to serve the Delaware market. (D.I. 13, p. 8).

Plaintiffs' basis for the Court's application of the "dual jurisdiction" theory is *Power Integrations, Inc. v. BCD Semiconductor Corp.*, 2008 WL 1775415, at *8 (D. Del. Apr. 11, 2008).[2] The Court held that "[t]he analysis required to determine whether personal jurisdiction exists under Delaware's long-arm statute is functionally equivalent to Justice O'Connor's test for determining whether an exercise of jurisdiction comports with Due Process in a stream of commerce case." *Id.* at *9. Plaintiffs likewise acknowledge that the standard for establishing "dual jurisdiction" under the Delaware long-arm statute is similar to the standard set forth by

---

[2] The court in *Power Integrations* did not resolve the jurisdictional issue and instead ordered jurisdictional discovery to evaluate the credibility of the defendant's asserted lack of knowledge and intent. *Power Integrations*, 2008 WL 1775415, at *10.

Justice O'Connor in her plurality opinion in *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 107 (1986). (D.I. 13, p. 12).

As noted by Plaintiffs, Justice O'Connor's plurality opinion in *Asahi* requires more than mere placement of a product into the stream of commerce as a basis for personal jurisdiction. *Id.* The Justice O'Connor test set forth in *Asahi* "requires placement of the product into the stream of commerce plus 'an act of the [non-resident] defendant purposefully directed toward the forum State.'" *Power Integrations*, 2008 WL 1775415, at *8 citing *Asahi*, 480 U.S. at 112. "Such additional conduct is important because it 'may indicate an intent or purpose to serve the market in the forum State.'" *Power Integrations*, 2008 WL 1775415, at *8 citing *Asahi*, 480 U.S. at 112.

Plaintiffs' Answering Brief fails to identity the types of additional conduct listed by Justice O'Connor to evidence an intent to serve the forum state. "Justice O'Connor listed several examples of 'additional conduct' sufficient to demonstrate a defendant's intent to serve a forum State: 'designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as a sales agent in the forum State.'" *Power Integrations*, 2008 WL 1775415, at *8 citing *Asahi*, 480 U.S. at 112. None of these facts are present in the case at bar.

LTI does not advertise in Delaware. (D.I. 12, ¶12). LTI's Yellow-76 vents are designed to meet the specifications of Valeo and, thus, are not specifically designed for sale in Delaware. Tapp Decl., ¶6. LTI does not have any channels for providing advice about its Yellow-76 vents to end users in Delaware. Tapp Decl., ¶8. In addition, LTI does not have a sales agent or distributor in Delaware. (D.I. 12, ¶¶9-10). Consequently, LTI does not engage in any additional

conduct sufficient to demonstrate its intent to specifically serve the Delaware market as required under Justice O'Connor's stream of commerce standard.

Plaintiffs conclude that LTI should be subject to personal jurisdiction in Delaware because "LTI placed its vents into the stream of commerce knowing that Valeo would incorporate them into headlamps installed in the Dodge Durango and Chrysler Aspen in Newark, Delaware." (D.I. 13, p. 11). Contrary to Plaintiffs' allegations, LTI had no knowledge that the Aspens or Durangos were assembled in Newark, Delaware prior to reviewing Plaintiffs' Answering Brief. Tapp Decl., ¶4. LTI would have no reason to know where the automobiles were assembled because it is irrelevant to the design and sale of LTI's Yellow-76 vents to Valeo in Indiana. Tapp Decl., ¶7. These facts establish that LTI had no intent to serve the Delaware market.

The primary case relied on by Plaintiffs in their Answering Brief to establish personal jurisdiction over LTI under a stream of commerce theory is *Motorola Inc. v. PC-Tel*, 58 F. Supp. 2d 349, 352 (D. Del. 1999). In *Motorola*, the Court subjected a defendant with no contact with the forum state to jurisdiction in Delaware based on important facts not present in the current case. A more recent Delaware case that followed these important distinctions in refusing to assert personal jurisdiction over a non-resident defendant is *M&M Techs., Inc. v. Gurtler Chems., Inc.*, 2005 WL 293509, at *7 (D. Del. Feb. 8, 2005) (finding that subjecting a non-resident manufacturer of a chemical component to personal jurisdiction in Delaware would offend the Due Process Clause).

In *Motorola*, the Court found that the defendant's revenues were based on sales to end users of products containing its components. *Motorola*, 58 F. Supp. 2d at 352. *See also M&M Techs.*, 2005 WL 293509, at *7 (distinguishing *Motorola*); *Cree, Inc. v. Bridgelux, Inc.*, 2007

WL 3010532, at *5 (M.D.N.C. July 5, 2007) (distinguishing the facts of *Motorola*). The Court further noted that the "'End User distribution channel" of defendant's licensing agreement 'contemplate[d] sale to retail consumers including consumers in Delaware of Shipped End User Product[s] through retail outlets.'" *Motorola*, 58 F. Supp. 2d at 352; *M&M Techs.*, 2005 WL 293509, at *7. LTI's income for the sale of its Yellow-76 vents is solely based on its sales to Valeo – there is no consideration for sales to end users. Tapp Decl., ¶ 10.

In addition, in *Motorola,* the defendant maintained an interactive website that allowed users to download commands to be used with the software component. *M&M Techs.*, 2005 WL 293509, at *7. Customers could also order products from the defendant's website and obtain customer support directly from the defendant by telephone or the Internet. *Motorola*, 58 F. Supp. 2d at 352; *M&M Techs.*, 2005 WL 293509, at *7. The record in *Motorola* also indicated that Delaware customers had utilized the features of defendant's support network. *Motorola*, 58 F. Supp. 2d at 352; *M&M Techs.*, 2005 WL 293509, at *7. Contrary to the facts in *Motorola*, LTI's website does not allow end-user customers to order LTI products and is merely an informational website about its products. (D.I. 12, ¶20). Thus, LTI does not have a support network for its vents that can be utilized by end users in Delaware. For these reasons, LTI's conduct falls far short of the contact relied upon by the Court in *Motorola* to subject the defendant to personal jurisdiction under a stream of commerce theory.

Plaintiffs also cites to a Texas district court decision and a Michigan district court decision, which both found personal jurisdiction over a component manufacturer under a stream of commerce theory, *Jacobs Chuck Mfg. Co. v. Shandong Weida Machinery Co.*, 2005 WL 3299718 (E.D. Tex. Dec. 5, 2005) and *Donnelly Corp. v. Reitter & Schefenacker GmbH & Co.*,

189 F. Supp. 2d 696 (W.D. Mich. 2002). (D.I. 12, pp.10-11). Plaintiffs' reliance on *Jacobs Chuck* and *Donnelly* is misplaced.

The *Jacobs Chuck* court followed Fifth Circuit precedent that had adopted the Justice Brennan stream of commerce theory – not the Justice O'Connor theory that is consistent with the relevant Delaware long-arm statute.[3] *Jacobs Chuck*, 2005 WL 3299718, at *3. Likewise, the *Donnelly* court rejected the Justice O'Connor stream of commerce theory in favor of the Justice Brennan approach. *Donnelly*, 189 F. Supp. 2d at 707-08. As noted above, this Court has recently applied the Justice O'Connor stream of commerce theory. *Power Integrations*, 2008 WL 1775415, at *9. Plaintiffs similarly apply the Justice O'Connor stream of commerce theory in asking this Court to assert personal jurisdiction over LTI. (D.I. 13, p. 12). Thus, the *Jacobs Chuck* and *Donnelly* decisions are of little relevance since they applied the Justice Brennan stream of commerce theory. Conversely, a Pennsylvania court following the Justice O'Connor stream of commerce theory refused to assert personal jurisdiction over a component manufacturer merely because it sold component parts to nationwide distributors. *Davlyn Mfg. Co. v. H&M Auto Parts, Inc.*, 414 F. Supp. 2d 523, 531 (E.D. Pa. 2005).

LTI does not engage in any additional conduct intended to serve the Delaware market. Consequently, Plaintiffs cannot establish personal jurisdiction over LTI under the applicable stream of commerce theory. Subjecting LTI to personal jurisdiction in Delaware would offend traditional notions of fair play and substantial justice. *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1358 (Fed. Cir. 1998).

---

[3] Delaware's long-arm statute is liberally construed to the maximum extent possible within the constraints of the Due Process Clause. *Power Integrations*, 2008 WL 1775415, at *4.

## II.  GORE'S REQUEST FOR JURISDICTIONAL DISCOVERY IS UNNECESSARY.

As demonstrated above, it is clear that LTI's conduct in Delaware does not satisfy the Justice O'Connor stream of commerce requirements for personal jurisdiction established in *Asahi* and, therefore, LTI should not be subject to personal jurisdiction in Delaware. Plaintiffs have not made a minimal showing of LTI's intent to serve the Delaware market to entitle Plaintiffs to jurisdictional discovery. *Solae, LLC v. Hershey Canada Inc.*, 2008 WL 2019472, at *7 (D. Del. May 9, 2008). If the Court determines there is a need for limited jurisdictional discovery to verify LTI's lack of intent to serve the Delaware market, LTI has no objection.

## CONCLUSION

For the reasons set forth above and in LTI's opening brief, LTI respectfully requests that the Court dismiss Plaintiffs' Complaint against LTI for lack of personal jurisdiction.

OF COUNSEL:

John A. Kenney
Michael D. McClintock
Charles L. McLawhorn, III
McAfee & Taft
Two Leadership Square, 10th Floor
211 North Robinson
Oklahoma City, OK  73102

Dated: May 15, 2008

*/s/ Anne Shea Gaza*
Frederick L. Cottrell, III (#2555)
Anne Shea Gaza (#4093)
Richards, Layton & Finger PA
920 N. King Street
Post Office Box 551
Wilmington, DE  19801
(302) 651-7700
cottrell@rlf.com
gaza@rlf.com

*Attorneys for Defendant*
*Label Technologies, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th of May, 2008, I caused to be hand delivered the foregoing document on counsel below and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

>Karen Jacobs Louden
>Rodger D. Smith II
>Morris, Nichols, Arsht & Tunnell, LLP
>Chase Manhattan Centre, 18th Floor
>1201 North Market Street
>P.O. Box 1347
>Wilmington, Delaware 19899-1347

*/s/ Anne Shea Gaza*
Anne Shea Gaza (#4093)
gaza@rlf.com

# EXHIBIT 1

Case 1:08-cv-00111-GMS    Document 15-2    Filed 05/15/2008    Page 1 of 3

EXHIBIT 1



Attorney Docket No. MI/161A

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:　　　　　　　　　) Group Art Unit: 2875
Peter J. Kubizne et al.　　　　　　　　) Examiner: Ward, J.
　　　　　　　　　　　　　　　　　　)
Serial No.: 00/009,486　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
Filed: January 20, 1998　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
For: SYSTEM FOR REDUCING　　　　)
　　　CONDENSATION IN ENCLOSED LAMP )
　　　HOUSINGS　　　　　　　　　　)

RECEIVED
JUN 19 2000
TECHNOLOGY CENTER 2800

Honorable Commissioner of Patents
and Trademarks
Washington, D. C. 20231

### DECLARATION OF DONALD P. BURCH

Sir:

　　1. My name is Donald P. Burch. I hold a B.S.M.E. from the University of Detroit. I have 32 years of automotive engineering experience including 9 years of experience as Global Engineering Manager at Ford Motor Company responsible for product design and engineering on a global basis for automotive lighting products.

　　2. In my work as a Global Lighting Product Engineering Manager, the general understanding in the automotive industry prior to Gore's introduction of its condensation reduction vent system was that lamp vent designs should be optimized for convective airflow within lamps. If microporous vents were used in lamp vent designs, the total vent surface area was far below 132mm2. There were no perceived benefits to increasing the microporous vent surface area beyond 132 mm2, classifying lamp vent systems of this size as impractical.

　　3. Gore's new condensation reduction vent system was first offered for sale in 1998 and was promoted by Gore as utilizing diffusion through a microporous, water vapor permeable material to reduce lamp moisture condensation. This feature of Gore's condensation reduction vents was a novel concept and the idea of designing larger surface

Page 2 of 2

area microporous vents (i.e., greater than 132 mm2) was clearly contrary to conventional vehicle lamp vent design approaches.

4. Based on my years of experience with lighting design, it was not only unexpected to me, but also contrary to conventional lamp design principles that Gore would design and offer for sale condensation reduction vents for vehicle front lamps having total microporous vent opening area sizes greater than 132 mm2 and condensation reduction vents for vehicle rear lamps greater than 235 mm2 total microporous vent opening area.

5. A Gore microporous, water vapor permeable material vent system, with a total vent opening size greater than 132 mm2, was successfully validated for the MY1999 Mercury Villager/Nissan Quest headlamp. Based on the successful commercial performance of the Villager/Quest headlamp vent system, and further evaluation testing conducted by Visteon Automotive Systems, the Gore condensation reduction vent product is being qualified for additional headlamp programs.

I hereby declare that all statements made herein of my own knowledge are true and that the statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

June 6, 2000
Date

Donald P. Burch
Donald P. Burch